CASE 95—PETITION ORDINARY—MAY 25.

# Cincinnati, New Orleans & Texas Pacific Railway Co.'s Receiver v. Webb.

APPEAL FROM GRANT CIRCUIT COURT.

1. COMMON CARRIERS—DELAY IN SHIPMENT—ACT OF GOD.—A common carrier which contracts to ship live stock on a certain day is liable for damages caused by its delay in the shipment of the same, the delay having been brought about by the scarcity of water for the operation of its trains, caused by a drought which was known to it at the time of the contract.

SIMRALL & GALVIN FOR APPELLANT.

1. A common carrier is not liable for a loss caused by an act of God,
[45]

and a continued drought is an act of God. Am. & Eng. Enc. of Law, vol. 1, pp. 173, 174 and 177; Ward v. Vance, 93 Pa. St., 499; Nugent v. Smith, L. R., 1; C. P. D., 19, 423; McPadden v. N. Y. Central R. R. Co., 44 N. Y., 478.

W. W. DICKERSON FOR APPELLEE.

1. The appellant knew when it entered into the contract with appellee for the shipment of the stock of the long prevailing drought, which was not a sudden, violent or unexpected act of God, like lightning, cyclones or earthquakes, and is not such an act of God as will excuse the performance of its contract. Cooley on Torts, secs. 640-41 and notes; Gordon v. Buchanan, 5 Yerg., 72; Friend v. Woods, 6 Grattan, 189; Am. & Eng. Enc. of Law, vol. 1, p. 174; Bailey v. DeCrespigny, L. R., 4 Q. B., 185; 7 Ky. Law Rep., 587; Bentley v. Bustard, 16 B. M., 686.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The plaintiff averred that he contracted with the appellant on November 12, 1894, to ship two car loads of cattle, and one of hogs from Williamstown, Ky., to Cincinnati, Ohio, a distance of thirty-five miles; the stock was loaded upon the cars furnished by the appellant, and was to be taken away at ten o'clock P. M., on that day; that if the stock had been taken away at that time or an hour or two later, it would have reached its destination, the Union Stock Yards, about five o'clock A. M., on the 13th of November, in ample time to have been placed upon the market on that day; that instead of shipping stock at that time, the company permitted it to remain on the cars standing at Williamstown, until six o'clock A. M., on the morning of the 13th; that it did not reach its destination until about five o'clock P. M. on that day; that in conse-- quence of which the plaintiff sustained damages amounting to $139.93.

The answer admits that the stock was received for shipment, but denies that it was loaded before ten o'clock at night by special or any directions of its agents or employes, or that the plaintiff was required to load the stock on the cars for shipment on any train due to leave the station at ten o'clock.  It denies that it made a contract with the plaintiff, by which it was to ship his stock about ten o'clock P. M. on November 12th.

On the issue thus raised in the answer the uncontradicted testimony is that the agent of the defendent told the son of the plaintiff who was looking after the matter of shipping the stock, that the train would be along about ten o'clock, and for him to load the stock and have it ready for that train; that he loaded it and left and went home, and was not at the depot any more that night.  The agent never advised him that the train was late, and he did not know that it was delayed, or that its running was interferred with by lack of rain or other cause.

The appellant complains at the action of the court in sustaining a demurrer to certain parts of its answer.  The defendant's answer to which a demurrer was sustained, is substantially as follows:  That at the time the stock was delivered for shipment to the defendant, there prevailed a great drought along the entire line of the defendant's road; that that condition had existed for many months; that the waters of the country traversed by the road, were nearly or entirely dried up; that the defendant's reservoir and water supply for the operation of the road, were ample for all reasonable and usual conditions; that upon that day the freight train which was to move

the stock was impeded, owing to the condition stated, and was delayed for several hours, and by reason thereof it was impossible for the defendant, by the exercise of diligence or care, to move the stock and deliver it at its destination sooner than it was done, that the failure of the water supply and the necessary but irregular arrival of the defendant's trains on that account was known to the plaintiff when he delivered the stock for shipment; that the result of the failure of the elements to supply the usual customary rain and of the unusual drought and water failure along the line of its road, made the earlier shipment of the stock unavoidable.

It is insisted that this condition was an act of God, and therefore the plaintiff was not entitled to recover the damages which he sustained. The court sustained a demurrer to that part of the answer, in which the facts were alleged to show that the delay was unavoidable because it was produced by conditions over which they had no control. It can not be said that a drought is a sudden or unexpected act of God. Day after day it fails to rain, and from that condition the drought results. Earthquakes, lightnings and cyclones come with but little if any warning.

Mr. Cooley in his works on Torts, 640, says: "The obligation which is imposed on him by the common law, is that he shall deliver at its destination the property re ceived by him, without damages while in his hands, unless prevented by an act of God, or of the public enemy."

A loss may be said to have been caused by an act of God when it resulted immediately from a natural cause,

without the intervention of man, and could not have been prevented by the exercise of prudence, diligence and care, and the use of those appliances which the situation of the party renders it reasonable that he should employ.

The answer shows that the defendant was perfectly aware of the conditions that affected its ability to transport freight upon its road. It knew this at nine o'clock on the morning of the 12th, when it delivered its cars to the plaintiff. The drought did not unexpectedly occur between the morning of the 12th, when the cars were delivered to the plaintiff, and the hour when the stock was to be loaded. It contracted to ship the stock at about a certain hour, which contract was made with the full knowledge of the prevailing conditions. The plaintiff may have known that the great drought prevailed in the country, and that the defendant's trains may have been therefore delayed in consequence of it, but when the defendant contracted to ship the stock at a given time, he had a right to presume that it, notwithstanding the conditions prevailing, was able to comply with its contract, and would do so. The defendant undertook to ship the plaintiff's stock with the full knowledge of the difficulties which it had to encounter.

There is no allegation to show that there had been any change in the conditions as to the drought, or any act of God occurring between the time the contract was made to ship the stock and the time it should have been delivered at its destination, under the contract. If the defendant had entered into a contract with the plaintiff, before the drought came upon the country, that it would

on the 12th of November, 1894, ship the stock to Cincinnati on that day, then the defendant might have pleaded the lack of water supply, resulting from the drought, as an excuse for refusing to receive and ship the stock on that day.

Counsel for appellant is in error in saying that the court sustained a demurrer to so much of the answer as denied that the appellee had contracted to deliver the stock at any given time, the order sustaining the demurrer does not show that the court sustained a demurrer to that part of the answer.

The judgment is affirmed.